Filed 5/3/21  In re R.T. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.T.,<br><br>Defendant and Appellant. | F080525<br><br>(Super. Ct. No. JW136487-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Cynthia L. Loo, Referee.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P.J., Franson, J. and Meehan, J.

Minor, R.T., appeals from a disposition order adjudging him a ward of the juvenile court, placing him on probation, and committing him to the Kern Crossroads Facility based upon the true finding that the minor committed assault with a deadly weapon. (Welf. & Inst. Code, § 602, subd. (a).) He contends that (1) there was insufficient evidence for the juvenile court to have found true the assault with a deadly weapon allegation against him and (2) the court failed to make required educational findings prior to ordering out-of-home placement. The People disagree with the minor's first contention but agree with the minor's second contention. We affirm the disposition but remand to the juvenile court for findings and orders under rule 5.651(b)(2) of the California Rules of Court[1] regarding the minor's special educational needs.

## PROCEDURAL SUMMARY

On September 24, 2019,[2] the Kern County District Attorney filed a wardship petition (Welf. & Inst. Code, § 602, subd. (a)), alleging the minor committed assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1);[3] count 1). The petition further alleged that the minor inflicted great bodily injury upon the victim in the commission of the offense (§ 12022.7, subd. (a)).

On December 16, the juvenile court found the petition true. On December 31, the juvenile court concluded the minor's offense was a felony. The minor was then adjudged a ward of the juvenile court, placed on juvenile probation for a period not to exceed his 21st birthday, and committed to the Kern Crossroads Facility.

On the same date, the minor filed a notice of appeal.

---

[1]    All further references to rules refer to the California Rules of Court.

[2]    All further dates refer to the year 2019 unless otherwise stated.

[3]    All further statutory references are to the Penal Code unless otherwise stated.

## FACTUAL SUMMARY

### The People's Case

On September 20, Baljinder Khinda worked in Kern County as the manager of a convenience store. Khinda encountered the minor twice before September 20. Once, the minor entered the store and made a mess before making a purchase. Khinda asked the minor not to return after that incident. After that time, Khinda saw the minor begging outside of the store. Khinda asked the minor not to beg outside of the store and the minor ignored him.

On September 20, Khinda saw the minor sitting on a bicycle and begging outside of the store.[4] A female store employee asked the minor to leave but he did not leave. Khinda then went outside the store and asked the minor to leave. When the minor did not leave, Khinda pushed the minor's bicycle at the handlebars. Khinda may also have kicked the minor's bicycle. When Khinda pushed the bicycle, the minor swung his hand and struck Khinda in the stomach. The minor said to Khinda " 'I stab you. I stab you.' " Khinda then noticed that his stomach was bleeding and saw the minor held a pocketknife. During that interaction, Khinda swung his hand at the minor and may have hit him.

Khinda went back into the store, retrieved "a small bat," and called 911. Khinda went back outside with the bat. The minor attempted to flee but Khinda struck the minor with the bat, took his bicycle, and told him the bicycle would not be returned until the police arrived.

Khinda was transported to the hospital by ambulance where his wound was treated with three stitches.

---

**4**     A surveillance video of the confrontation between Khinda and the minor in front of the store—including the portion of the confrontation when Khinda was stabbed—was admitted. The surveillance video did not include an audio track. A portion of the confrontation that took place after the minor stabbed Khinda was not captured on the video.

3.

**The Minor's Case**

The minor met Khinda in June. The minor went to the store to purchase cookies for his mother and a drink for himself. He asked Khinda if the five dollars he had was enough for the cookies and drink. Khinda responded that it was not. The minor purchased the cookies and took them home to his mother. The minor then returned and asked, " 'Where's my dollar seventy-five?' " Khinda told the minor that he could not give back the minor's money, but the minor could take a drink.

On a later day, the minor returned to the store. Khinda told the minor to take whatever he wanted and leave. Khinda then challenged the minor to fight. A female employee locked the door to the store. When the minor attempted to leave, Khinda slapped and kicked the minor.

The minor went to the convenience store on September 20. He did not enter the store. While he was outside, he saw Khinda open a folding knife and place it on the store counter. He took photos of the knife and then left.[5]

He returned later in the day but again did not enter the store. A woman told the minor to " '[l]eave it' " but he did not understand what she meant. Khinda then approached the minor and began "talking to [the minor] about [his] mom." Khinda asked, "You be giving your mom a hard time?" Khinda then threatened the minor and appeared to get mad. The minor did not recall what words Khinda used to threaten him, but he did recall Khinda repeatedly telling him that he was going to "make [the minor] leave." The minor was afraid of Khinda because he had seen Khinda with a knife earlier in the day.[6] The minor did not see the knife in Khinda's hands at the time of the confrontation. Khinda kicked the minor's bicycle and slapped him across the face.

---

[5]    A photograph was admitted that the minor identified as the knife on the store counter.

[6]    The minor also testified that he did not think Khinda would use the knife.

4.

Khinda backed the minor up to a wall so the minor "tried to protect [him]self the best [he] could" by stabbing Khinda so he could escape. As the minor fled, Khinda struck him once with a bat.

### The Juvenile Court's Finding

"The Court has considered the testimony of both [Khinda] as well as the testimony of the minor, and the Court, as all counsel did—we all watched that video over and over again.

"In this situation, the Court is going to find that the Court does not believe, unfortunately, that [the minor] acted reasonably in stabbing the victim due to the verbal threats. The Court is—has considered … the picture of the knife, but the Court was taken with the fact that even after seeing this knife, the child chose to return to the [store]. The Court is mindful of the inconsistent testimony where sometimes [the minor] said he was fearful and shaking and other times where he said, particularly later in his testimony, that he was not fearful, not afraid, and didn't think that [Khinda] would use the knife; therefore, the Court is going to find that the People have met their burden, and the Court will sustain the petition of September 24th."

## DISCUSSION

### A. Sufficiency of the Evidence

The minor contends that the evidence was insufficient to establish that he committed an assault with a deadly weapon because "there was ample evidence the minor acted in self[-]defense, reasonably believing he was in imminent danger." We disagree.

Self-defense is a complete defense to assault with a deadly weapon. (*People v. Adrian* (1982) 135 Cal.App.3d 335, 340.) Self-defense applies when a defendant acts under an honest and reasonable belief in the need to defend oneself or others from imminent danger of death or great bodily injury. (*People v. Rodarte* (2014) 223 Cal.App.4th 1158, 1164.) For a defendant's belief to be reasonable, " '[t]he threat of bodily injury must be imminent' and the [amount of] force used in response ' "reasonable under the circumstances." ' " (*People v. Brady* (2018) 22 Cal.App.5th 1008, 1014.)

Imminent harm is not that which appears to be prospective or even in the near future. (*In re Christian S.* (1994) 7 Cal.4th 768, 783.) " ' "An imminent peril is one that, from appearances, must be instantly dealt with." ' " (*Ibid.*, italics omitted.)

Whether the minor's conduct constituted an act of self-defense is a factual question. Therefore, the appropriate standard of review is sufficiency of the evidence. (*People v. Colbert* (1970) 6 Cal.App.3d 79, 85.)

> " 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the [disposition order] to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find [the allegation true] beyond a reasonable doubt." [Citations.] We presume in support of the [disposition order] the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] … We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a [disposition order].' " (*People v. Brown* (2014) 59 Cal.4th 86, 105−106; see *In re M.V.* (2014) 225 Cal.App.4th 1495, 1518 ["The standard of review in juvenile proceedings involving criminal behavior is the same as that required in adult criminal trials .…"].)

Here, the juvenile court viewed the surveillance video depicting the minor stabbing Khinda and the interaction between Khinda and the minor that led to the stabbing. The minor testified that he was afraid of Khinda because he had seen Khinda open a folding knife and place it on the store counter earlier in the day. However, after allegedly seeing the knife, the minor returned to the store. The minor testified that he did not think Khinda would hurt him with the knife. Further, immediately before the minor stabbed Khinda, both of Khinda's hands were visible and the minor testified he did not see a knife.

Based on that record, the juvenile court concluded that the minor did not act in reasonable self-defense when he stabbed Khinda. The minor would have us find that the

evidence supported his defense. He contends that Khinda's testimony was not credible because he failed to tell the police he "kicked the minor's bike and hit him first." However, our purpose here is not to reweigh the evidence or ask whether inferences more favorable to the minor could have been drawn. Instead, based on the entire record, and in the light most favorable to the disposition order, we conclude substantial evidence supported the juvenile court's determination that the minor did not act in reasonable self-defense and therefore committed assault with a deadly weapon.

### B. Educational Findings and Orders

The report of the probation officer prepared to assist the juvenile court in its disposition included the notation that the minor had special educational needs for which an "Individualized Education Plan (IEP)" had been created. The minor contends that the juvenile court erred in reaching a disposition without considering the minor's special educational needs. The People agree, as do we.

At a dispositional hearing, a juvenile court is required to consider whether a minor's "educational, physical, mental health, and developmental needs, including any need for special education and related services, are being met[,]" [¶] "[i]dentify the educational rights holder on form JV-535[,] and" [¶] "[d]irect the rights holder to take all appropriate steps" to ensure the minor's needs are met. (Rule 5.651(b)(2)(A), (b)(2)(B), (b)(2)(C); see *In re Angela M*. (2003) 111 Cal.App.4th 1392, 1398; see generally *In re I.V*. (2017) 11 Cal.App.5th 249, 255–256 [describing the statutory federal and state frameworks requiring availability of special education services and the implementation to juvenile delinquency proceedings through the California Rules of Court].)

Here, the juvenile court was informed of the existence of an IEP for the minor but was not provided with a copy. It therefore did not consider the minor's special educational needs or make any of the required findings or orders. We remand the matter to the juvenile court to comply with the requirements of rule 5.651(b)(2).

## **DISPOSITION**

The matter is remanded to the juvenile court with directions to make the findings and orders required under rule 5.651(b)(2) regarding the minor's educational needs. The order is otherwise affirmed.